UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIE L. PERRY,

       Plaintiff,                        CIVIL ACTION NO. 12-11068

       v.                                DISTRICT JUDGE THOMAS L. LUDINGTON

                                      MAGISTRATE JUDGE MARK A. RANDON
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Marie L. Perry challenges the Commissioner of Social Security's final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 9, 11). Judge Thomas L. Ludington referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.    RECOMMENDATION**

Because substantial evidence supports the ALJ's decision, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    REPORT**

    *A.    Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on August 12, 2008. She also applied for supplemental security income on August 19, 2008. In both applications, Plaintiff alleged she became disabled on April 18, 2008 (Tr. 13). The Commissioner initially

denied Plaintiff's application (Tr. 13). Plaintiff appeared with counsel for a video hearing before Administrative Law Judge ("ALJ") Lantz McClain, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 13-29). Plaintiff requested an Appeals Council review (Tr. 7-9). On January 12, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.     *ALJ Findings*

Plaintiff was 45 years old on her alleged disability onset date. She has a high school education and past relevant work as an assistant manager at a fast food restaurant (Tr. 28-29). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date (Tr. 15).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: history of acute liver failure, asthma, bilateral carpal tunnel syndrome and cubital syndrome[1], status post injury to left hand, degenerative disc disease of the cervical spine, depression and anxiety (Tr. 15). The ALJ also found that Plaintiff's history of polysubstance abuse was non-severe:

> [a] thorough review of [Plaintiff's] medical records and allegations indicate no vocational impairments due to [her] reported alcohol abuse or use. Medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.

(Tr. 15-16).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 16).

---

[1] "Cubital tunnel syndrome . . . cause[s] severe pain, numbness, tingling, and muscle weakness in the hands and arms." *See* http://www.webmd.com/pain-management/cubital-radial-tunnel-syndrome (last visited February 1, 2013).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> light work . . . .  [Plaintiff] is able to occasionally lift[] and/or carry[] twenty (20) pounds, frequently lift[] and/or carry[] ten (10) pounds, stand and/or walk at least six (6) hours out of an eight (8) hour workday, and sit at least six (6) hours out of an eight (8) hour workday, all with normal breaks, but she should not constantly use . . . hands for such repetitive tasks as keyboarding, should avoid concentrated exposure to such things as dust or fumes, and is limited to simple, repetitive tasks.

(Tr. 18).

At step four, the ALJ found that Plaintiff could not perform her previous work (Tr. 28).

At step five, the ALJ denied Plaintiff benefits, finding she could perform a significant number of jobs available in the national economy, such as cashier II (104,800 available jobs in Michigan; 3,439,380 jobs in the United States) and motel housekeeper (24,670 available jobs in Michigan; 887,890 jobs in the United States) (Tr. 29).

  *C.*  *Administrative Record*

    **1.**  **Plaintiff's Hearing Testimony and Statements**

Plaintiff sustained broken and fractured ribs after she fell down some stairs. After the accident, Plaintiff took Vicodin to control her pain, but it made her "very sick." She then started regularly taking Extra Strength Tylenol which, she said, caused her kidneys and liver to shut down due to acetaminophen toxicity (Tr. 45).[2]

Plaintiff also testified that she has deteriorating disks in her cervical spine, asthma, bilateral cubical and carpal tunnel, a dislocated finger, "shooting pain" in her neck that radiates

---

[2] It has been reported that "[s]imply taking 2 Extra Strength Tylenol tablets more than 4 times a day will produce an overdose. It only takes a few days of exceeding the maximum dose to cause liver damage. If the patient adds alcohol to his or her acetaminophen regimen, the risk of damage increases further." *See Journal for Nurse Practitioners,* 2007;3(3):186-188. Available at http://www.medscape.com/viewarticle/557074 (last visited February 4, 2013).

to her hands and makes them numb, post traumatic stress disorder, major depression, high anxiety, stress and memory problems (Tr. 46-47 51, 54).

Plaintiff said that she is unable to sit up in a chair; she cannot lift more than five pounds, button her clothes, grip, grasp, push or pull (Tr. 46-47, 51-52). She can only stand for 45 minutes and has to lie down throughout the day for 45 minutes to an hour (Tr. 46, 48-49).

Despite her claimed limitations, Plaintiff said she can do laundry, grocery shop, dust and cook; but, she cannot vacuum, drive or wash dishes (Tr. 49, 52).

### 2.   Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual who: is Plaintiff's age and has the same education and vocational experience as Plaintiff. The individual is limited to light work; can occasionally carry 20 pounds; frequently carry 10 pounds; and can stand, walk and sit six hours in an eight-hour workday. The individual can frequently (but not constantly) use her hands and cannot use them for repetitive tasks. She has to avoid concentrated exposure to dust and perfume and is limited to simple, repetitive tasks (Tr. 61-62). The VE testified that such an individual could not perform Plaintiff's past work as an assistant manager (Tr. 62). However, such an individual could perform unskilled light work as a cashier II (104,800 available jobs in Michigan; 3,439,380 jobs nationally) and motel housekeeper (24,670 available jobs in Michigan; 887,890 jobs nationally) (Tr. 62).

### D.   *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ erred in his credibility determination, and he should have found that her polysubstance abuse constitutes a "severe" impairment.[3]

---

[3] Plaintiff also argues that the ALJ erred by: (1) giving "great weight" to a report from Dr. Mark Wilson that only prohibits Plaintiff from repetitive pushing, pulling, gripping and grasping; and (2) not incorporating into the hypothetical to the VE results of physical assessments from "other medical testing." These arguments lack merit. Although the ALJ gave "great weight" to

-4-

**III.    DISCUSSION**

  *A. Framework for Disability Determinations*

  Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

  The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

---

Dr. Wilson's report (Tr. 28), his RFC determination included limitations other than no repetitive tasks.  Plaintiff does not challenge the RFC determination.  And, Plaintiff does not specify what physical limitations from other medical tests the ALJ failed to incorporate.  Accordingly, Plaintiff's argument is waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995-996 (6th Cir. 1997) ("[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.  *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a

zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

 *C.* *Analysis*

  **1.** **The ALJ's Credibility Determination**

Plaintiff argues that the ALJ's credibility determination is flawed because he did not analyze the factors outlined in 20 CFR § 404.1529(c)(3):

- (i)  Your daily activities;

- (ii)  The location, duration, frequency and intensity of your pain or other symptoms;

- (iii)  Precipitating and aggravating factors;

- (iv)  The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

    (v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

    (vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and

    (vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(emphasis added). The record demonstrates that the ALJ stated specific reasons, supported by evidence in the record, for the weight given to Plaintiff's testimony. The ALJ supported his conclusion that Plaintiff's testimony was not fully credible using the medical evidence (Tr. 21-28). For example, Plaintiff testified that she cannot grip, grasp, push or pull; and she can only lift five pounds. However, in November of 2008, Plaintiff's grip strength was 20 pounds bilaterally; she could perform housekeeping duties; shop; do laundry; cook, dress, bath and groom herself; exercise; run errands on the bus and take care of two homeless Vietnam veterans. A physical RFC indicated Plaintiff could lift 50 pounds occasionally and 25 pounds frequently; there was no restriction in pushing or pulling (Tr. 24-25).

      Plaintiff also testified that she suffers anxiety and asthma attacks. However, in November of 2007, Plaintiff's asthma was "much improved," and her anxiety was "controlled." In February of 2008, Plaintiff's anxiety and depression were "improved." In April of 2008, Plaintiff was in "adequate control" of her asthma (Tr. 21).

      Further, Plaintiff testified that she has memory problems, but in February of 2008, Plaintiff's memory was "normal," and in November of 2008, there was no memory loss (Tr. 21, 24).

      Finally, Plaintiff testified that her neck pain inhibits her ability to work. However, in September of 2008, Plaintiff had no abnormalities in her neck, and in November of 2008, Plaintiff's physical examination of her neck was within normal limits (Tr. 23-24).

In addition to the objective medical evidence, the ALJ analyzed the applicable factors delineated in the regulations:

> [b]ecause symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements[.]

(Tr. 19). In making his credibility determination, the ALJ considered Plaintiff's testimony, which included Plaintiff's daily activities; the location of Plaintiff's pain; the type of medication Plaintiff takes; treatment, other than medication, Plaintiff received for pain relief; and the measures she used to relieve her pain (Tr. 20).

Furthermore, this Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 Fed. App'x. 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed . . . ." *Kuhn v. Comm'r of Soc. Sec.*, 124 Fed. App'x. 943, 945 (6th Cir. 2005). The Commissioner's determination regarding the credibility of a claimant's subjective complaints is reviewed under the deferential "substantial evidence" standard. "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 Fed. App'x. 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The ALJ provided a detailed discussion of her reasons for finding that Plaintiff's subjective complaints were not fully credible. Simply put, the ALJ's credibility

determination is supported by substantial evidence. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Infantado v. Astrue*, 263 Fed. App'x 469, 475-76 (6th Cir. 2008).

### 2. Polysubstance Abuse as a "Severe" Impairment

The ALJ did not include polysubstance abuse among Plaintiff's "severe" impairments at step two of the disability analysis. However, "the failure of an [ALJ] to include a particular condition among a claimant's severe impairment[s] does not constitute reversible error if, considering the claimant's other severe impairments, the [ALJ's RFC] reasonably accommodates the limitation of function caused by such [condition]." *Flannery v. Astrue*, 2013 WL 316795 at *6 (S.D. Ohio Jan. 28, 2013) (citation omitted); *see also Nejat v. Comm'r of Soc. Sec.*, 359 Fed. App'x 574, 577 (6th Cir. 2009):

> After an ALJ makes a finding of severity as to even one impairment, the ALJ "must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe'" Soc. Sec. Rul. 96-8p, 1996 WL 374184 at *5 (emphasis added). And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does "not constitute reversible error." *Maziarz v. Sec'y of HHS*, 837 F.2d 240, 244 (6th Cir. 1987).

Here, the ALJ found Plaintiff had several "severe" impairments – acute liver failure, asthma, bilateral carpal tunnel syndrome and cubital syndrome, status post injury to left hand, degenerative disc disease of the cervical spine, depression and anxiety (Tr. 15). The ALJ then proceeded to the remaining steps in the disability analysis in which he considered Plaintiff's polysubstance abuse (Tr. 17, 21-25, 28), and Plaintiff does not articulate any additional limitation of function due to her claimed polysubstance abuse. Plaintiff's argument lacks merit.

### IV. CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation.  *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office.  *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing.  *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response.  *See* E.D. Mich. LR 72.1(d)(3), (4).

        s/Mark A. Randon  
        Mark A. Randon  
        United States Magistrate Judge

Dated:  February 4, 2013

*Certificate of Service*

-12-

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 4, 2013, by electronic and/or ordinary mail.*

*s/Eddrey O. Butts*
*(Substitute)*
*Case Manager*